UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:15-CV-00008-BO

**Deborah G. Green**,

        Plaintiff,

v.

**Social Security Administrator**, et al.,

        Defendants.

**Memorandum & Recommendation**

    Plaintiff Deborah G. Green instituted this action on March 6, 2015, to challenge the denial of her application for disability insurance benefits. Green claims that Administrative Law Judge Edward W. Seery erred in his determination by failing to find that Green's fibromyalgia is a medically determinable impairment, failing to locate an agency doctor's notes, erroneously assigning little weight to a Residual Functional Capacity ("RFC") Questionnaire signed by a nurse practitioner, and failing to consider the Vocational Expert's ("VE") opinion that Green would not be able to work given Green's testimony at the hearing. Green also argues that she had inadequate counsel, that the Appeals Council repeated inadequacies in ALJ Seery's determination and failed to consider a letter she wrote to it, that the hearing transcript contains errors, and that she has experienced undue delay. Green, proceeding *pro se*, filed a motion seeking remand (D.E. 26) and Defendant Carolyn Colvin, the Acting Commissioner of Social Security,[1] filed a motion seeking a judgment on the pleadings in her favor (D.E. 29).

---

[1] Green originally filed this action against the Social Security Administrator; Michael Gallagher, Administrative Appeals Judge; Robert Goldberg, Administrative Appeals Judge; Colvin; Eric Holder, United States Attorney General; Civil Process Clerk, United States Attorney's Office; Aldona Wos, Secretary of North Carolina Health and Human Services; and Carol Streckel, Director of the Division of Medical Assistance, North Carolina Health and Human Services.

After reviewing the parties' arguments, the court determines that ALJ Seery erred in his decision by failing to locate and consider the CE report from a consultative examiner. This failure prevents meaningful review of Green's claim that ALJ Seery erred in assigning little weight to the physical RFC completed by a family nurse practitioner. Therefore the undersigned magistrate judge recommends[2] that Green's Motion for Remand be granted, that Colvin's Motion for Judgment on the Pleadings denied, and that the Commissioner's final decision be remanded for further consideration.

### I. Background

On June 21, 2010, Green protectively filed an application for disability insurance benefits on the basis of a disability that allegedly began on July 1, 2009. After her claim was denied at both the initial stage and upon reconsideration, Green appeared before ALJ Seery for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Seery determined Green was not entitled to benefits because she was not disabled. Tr. at 31, D.E. 24.

ALJ Seery found that Green had the following severe impairments: cervical spondylosis, major depressive disorder, generalized anxiety disorder, and obesity. *Id.* at 21. ALJ Seery also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 22. ALJ Seery determined that Green had the RFC to perform a restricted range of light work, but was limited to using her arms and hands to occasional overhead reaching and simple, repetitive, routine tasks in a low stress and predictable work routine environment. *Id.* at 24. ALJ Seery also concluded that Green was able to perform past relevant work as a cashier, and that considering her age, education, work experience and RFC, there were other jobs that existed in

---

Except for Colvin, all defendants were dismissed without Green's objection in July 2015. D.E. 23

[2] The court has referred this matter to the undersigned magistrate judge for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

2

Case 2:15-cv-00008-BO   Document 33   Filed 06/28/16   Page 2 of 15

the national economy that she was capable of performing. *Id.* at 29. These included: fast food worker and storage facility rental clerk. *Id.* at 30. Thus, ALJ Seery found that Green was not disabled. *Id.* at 30–31.

After unsuccessfully seeking review by the Appeals Council, Green commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on March 6, 2015. D.E.5.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part

404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

    **C.**     **Medical Background**

Green has a history of cervical spondylosis, major depressive disorder, generalized anxiety disorder, and obesity. In early 2010, Green sought treatment from Dr. David Hoang, an orthopedic specialist, for neck pain and right shoulder pain. Tr. at 255, D.E. 24. Dr. Hoang ordered x-rays, which demonstrated status post distal clavicle resection and C5-C6 spondylosis. *Id.* He diagnosed Green with a chronic cervical spondylosis/strain and a right trapezius trigger point/strain and referred her to physical therapy (*id.*), where she was determined to have good rehabilitation potential. *Id.* at 270–74. In a follow-up visit, Dr. Hoang ordered a MRI of Green's cervical spine and brain. *Id.* at 255. The MRI revealed advanced disc space loss at C5-6 with endplate osteophytes and posterior disc protrusion causing mild central canal stenosis; an uncovertebral spurring and disc bulge causing severe right and moderate to severe left foraminal stenosis; abnormal increased T2-weighted signal within the posterior aspect of the central spinal cord at the C2 level, which was not associated with central spinal canal stenosis; and mild degenerative changes at C6-7. The MRI was also questionable for multiple sclerosis, so Dr. Hoang referred Green to Dr. Rajiv Nanavaty, a neurologist, for a spinal tap. *Id.* at 254. Although

4

the spinal tap was unsuccessful (*id.*), Dr. Nanavaty opined that Green was suffering from a demyelinating disorder that was not multiple sclerosis. *Id.* at 289–92.

After the unsuccessful spinal tap, Dr. Hoang referred Green to Dr. Tina Rodrigue, a neurosurgeon, for evaluation. *Id.* at 251, 324. Dr. Rodrigue evaluated Green's MRI of the cervical spine and brain and noted that the MRI showed a hypointensity within the spinal cord at C2 without cord expansion and a degenerative disc with right-sided osteophyte formation at C5-6. *Id.* at 325. Dr. Rodrigue opined that Green suffered from a demyelinating process likely caused by a B12 deficiency and an anatomic abnormality within the cervical region. *Id.* at 325–26. Dr. Rodrigue declined to discuss with Green surgical interventions for the anatomic abnormality due to Green's self-reported heavy alcohol use, inactivity, and vitamin deficiencies. *Id.* at 326.

Green was also treated by her primary care physician, Dr. Galdini, for anxiety, depression, and neck, shoulder, and generalized pain from 2008 to 2013. In January of 2010, Green sought treatment for pain and insomnia. *Id.* at 376. In her treatment note from that visit, Dr. Galdini noted that Green was suffering from insomnia, multiple sore spots, unilateral trigger points above and below her waist, anxiety, and depression. *Id.* Dr. Galdini also mentioned the possibility of a fibromyalgia diagnosis, but stated that she would hold off on treatment. *Id.* Dr. Galdini eventually diagnosed Green with fibromyalgia in April 2011, noting that Green was positive for memory issues ("fibro fog"), 14 out of 18 trigger points, sleep issues, and depression (*id.* at 336), but that diagnosis was later dropped from Green's list of current diagnoses in February 2013. *Id.* at 359–61. In November 2012, Green sought treatment for severe shoulder pain. *Id.* at 362. Dr. Galdini's examination revealed moderate tenderness in the right mid-scapular and upper trapezius area, moderate tenderness in the medial low back (2+), and negative

5

straight leg raising. *Id.* at 363–64. Green refused a cortisone injection but agreed to try a prednisone taper. *Id.* at 362.

Green referred herself to Dr. Theresa Jackson, an orthopedic specialist, for evaluation of her cervical pain in April 2012. *Id.* at 340. Dr. Jackson's examination showed that Green had a decreased range of motion in the cervical spine; pain with palpation in the right upper and mid trapezius; pain with palpation in the the lower lumbar spine; and weakness at the shoulder abduction (3+/5), elbow flexion (4-), wrist extension (3+) and elbow extension (3+). *Id.* at 341. Green also had 4/5 strength on her left side and 4/5 strength in her lower extremities. *Id*. The straight leg raise was negative. *Id.* Dr. Jackson ordered a MRI, which revealed mild to moderate central stenosis, moderate bilateral foraminal stenosis, and mild facet athropathy at C5-6; mild central stenosis with mild left foraminal narrowing at C6-7; and a stable cord lesion at C2. *Id.* The stenosis appeared to be less severe than that seen in the previous MRI from 2010. *Id.* Dr. Jackson recommended that Green continue her current medication and use a soft cervical collar intermittently as Green declined surgical intervention, injection therapy, and physical therapy due to a lack of funds and a fear of needles. *Id.* at 338–39.

In May 2012, a nurse practitioner from Dr. Jackson's office completed a physical RFC Questionnaire for Green, stating that Green could sit, stand, or walk for less than two hours a day in an eight-hour working day; would require frequent breaks in an eight-hour working day; could never look down, hold her head in a static position, crouch, climb ladders, climb stairs, or lift and carry twenty pounds or more; and could rarely turn her head, look up, or stoop. *Id.* at 348–51. The RFC also stated that Green could never reach overhead and could spend 50% of an eight-hour working day grasping, twisting, and turning objects and completing fine manipulations. *Id.* at 350.

6

### D. Step Two

Green first argues that ALJ Seery erred at step two by failing to find that her fibromyalgia is a medically determinable impairment. Colvin contends that substantial evidence supports ALJ Seery's finding. The court agrees with Colvin.

A medically determinable impairment is an impairment that "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1580, 416.908. Fibromyalgia is a medically determinable impairment when a licensed physician diagnoses fibromyalgia, the diagnosis is supported by appropriate medical evidence, and the diagnosis is not inconsistent with the other evidence in the case record. Soc. Sec. Ruling, SSR 12-2P, Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869, at *2 (July 25, 2012) (hereinafter "SSR 12-2P"). The adjudicator uses either the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria to determine whether a physician's fibromyalgia diagnosis is supported by appropriate medical evidence. According to the 1990 ACR Criteria for the Classification of Fibromyalgia, a person has fibromyalgia if she has all three of the following criteria:

1. A history of widespread pain—that is, pain in all quadrants of the body … that has persisted (or that persisted) for at least 3 months. The pain may be fluctuate in intensity and may not always be present.
2. At least 11 positive tender points on physical examination…. The positive tender points must be found bilaterally … and both above and below the waist.
3. Evidence that other disorders that could cause the symptoms or signs were excluded.

*Id.* at 2–3. Similarly, a person has fibromyalgia according to the 2010 ACR Preliminary Diagnostic Criteria if she has all three of the following criteria:

1. A history of widespread pain;

7

2. Repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

*Id.* at 3 (internal footnotes omitted).

Although ALJ Seery did not thoroughly discuss the evidence contained in Green's prior medical history, he did state that "[w]hile [Green's] primary care physician had [fibromyalgia] listed, no other treating or examining physician, including a neurologist, listed her with this diagnosis or confirmed it. Tr. at 22. He then went on to note that he reviewed the physician's treating notes and determined that "[n]o medical evidence was submitted that establishes the three criteria for establishing a medically determinable impairment based on the 1990 [ACR] Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria…." *Id.* Based on his review, ALJ Seery concluded that Green's fibromyalgia was not a medically determinable impairment. *Id.* This conclusion is supported by the substantial evidence contained in the record.

Both the 1990 ACR Criteria for the Classification of Fibromyalgia and the 2010 ACR Prelimnary Diagnostic Criteria require evidence that physicians excluded other disorders that may cause the signs or symptoms of fibromyalgia. SSR 12-2P, 2012 WL 3104869, at *2–3 (July 25, 2012). Green's medical record contains no such evidence. Fibromyalgia first makes an appearance in Green's medical record on January 7, 2010, when Dr. Galdini—Green's primary care physician—treated Green for pain, insomnia, multiple sore spots, a unilateral trigger point above and below the waist, anxiety, and depression. Tr. at 309. On that day, Dr. Galdini wrote "?FM – hold on [treatment]" in her treatment notes. *Id.* Approximately one year later, Dr. Galdini again wrote "?FM" in her treatment notes. *Id.* at 332. Three months later, on April 26,

8

2011, Dr. Galdini diagnosed Green with fibromyalgia, noting that Green was experiencing memory issues ("fibro fog"), 14 out of 18 trigger points, and sleep issues. *Id.* at 336. However, the medical records do not show that other disorders were considered or ruled out at any time during Dr. Galdini's treatment of Green. While Green did undergo laboratory testing, that testing was completed more than a year before Dr. Galdini's diagnosis and the results were not referenced in the diagnosis. *Id.* at 276–78, 336; *see also* SSR 12-2P, 2012 WL 3104869, at *3 (July 25, 2012) ("[I]t is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs."). Furthermore, in Dr. Galdini's most recent treatment note from February 12, 2013, fibromyalgia no longer appears under the section where diagnoses are relayed. *See* Tr. at 361. Therefore, substantial evidence supports ALJ Seery's conclusion that Green's fibromyalgia is not a medically determinable impairment.

### E.   Missing Physician Report & Weight of Medical Opinion Evidence

Green also contends that ALJ Seery erred by not locating and considering the notes of Dr. Ferguson, "a Social Security Administration doctor" and by assigning little weight to a physical RFC Questionnaire signed by a nurse family practitioner. Colvin asserts that Green's first argument should fail because Green does not clarify who Dr. Ferguson is and what report is allegedly missing from the record. The court disagrees.

In his RFC determination, ALJ Seery considered Green's medical record, a physical RFC Questionnaire completed by a family nurse practitioner at Virginia Orthopedic and Spine Specialists, two psychological evaluations performed by separate consultative examiners, and the reports of a State agency physician and a State agency psychologist. Tr. at 24–28. He did not

9

consider, or even mention, notes or a report made by Dr. Ferguson. Dr. Ferguson's notes or report are also missing from the administrative transcript.

Although Dr. Ferguson's notes or report are missing from the transcript, a review of the transcript reveals that Dr. Ferguson provided a consultative examination report ("CE report") to the agency. The CE report is mentioned twice in the transcript: first in a listing of record evidence in a copy of the disability determination transmittal at the reconsideration level (Tr. at 78, 81) and second in the agency's case analysis dated March 27, 2012 (*id.* at 92). The disability determination transmittal lists a CE report from ASKDRFERGUSON INC[3] received October 31, 2011 as evidence of record and briefly describes the report. Tr. at 78, 81. Additionally, the CE report is referred to in the agency's case analysis as "10/28/11 Physical CE." Tr. at 92. Green asserts that the agency sent her to see Dr. Ferguson in 2011 (D.E. 5 at 3; D.E. 26 at 1), and that timeframe matches the date associated with the CE report from ASKDRFERGUSON INC. Accordingly, the undersigned determines that Dr. Ferguson examined Green, provided a CE report to the agency in 2011, and that CE report is missing from the record.

An ALJ has a duty to "contact the medical source who performed the consultative examination, give an explanation of [the] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report" when a CE report is inadequate or incomplete. 20 C.F.R. § 404.1519p(b); *see, e.g.*, *Vaught v. Astrue*, No. 7:08cv373, 2009 WL 1165397, at *8 (W.D. Va. Apr. 29, 2009). There is no indication in the record that ALJ Seery considered or even tried to find Dr. Ferguson's CE report. The court therefore concludes that ALJ Seery failed to fulfill his duty to develop the record and recommends remand. *See Bowden*

---

[3] The court notes that Green refers to Dr. Ferguson as "Dr. Furguson." D.E. 26 at 1. Although the spellings are slightly different, that difference is not enough for the court to determine that Green is not referring to Dr. Ferguson of ASKDRFERGUSON INC.

10

*v. Comm'r, Soc. Sec. Admin.*, No. SAG-13-0501, 2013 WL 5719001, at *2 (D. Md. Oct. 17, 2013) (remanding when "the record contains no evidence of any efforts made by the ALJ to locate" missing consultative examiner reports). The court also notes that Colvin and the state agencies she contracts with failed to fulfill their duty to oversee the CE process, which should include ensuring that CE reports that are ordered and paid for are provided and considered. *See* 20 C.F.R. §§ 404.1519s(a), 404.1519t(a), (b).

It is particularly troubling that a CE report is missing from the record as they are ordered "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the agency] to make a determination or decision on [the claimant's] claim." 20 C.F.R. § 404.1519a(b). Without such a crucial piece of evidence, the court is unable to engage in meaningful review of Green's claim that ALJ Seery erred by assigning little weight to the physical RFC completed by a treating medical source. This is another ground for remand. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (holding that remand may be appropriate when "inadequacies in the ALJ's analysis frustrate meaningful review" (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam) (internal quotation marks omitted)).

**F.     Other Claims**

Green also argues that her case should be remanded because her counsel was inadequate, the Appeals Council repeated alleged "discrepancies, inadequacies and omissions in Judge Seery's summation," the hearing transcript contains errors and omissions, the Appeals Council failed to consider the letter she wrote to it, and her case was "delayed to an abnormal extent." These arguments are meritless.

There is no constitutional right to a lawyer at a Social Security proceeding; therefore, an ineffective assistance of counsel claim in a Social Security proceeding is not cognizable. *Cornett*

11

*v. Astrue*, 261 F. App'x 644, 651 (5th Cir. 2008) ("[T]his [ineffective assistance of counsel] claim does not rise to the level of a constitutional violation. The Supreme Court has never recognized a constitutional right to counsel in Social Security proceedings."); *see also Duggan v. Barnhart*, 66 F. App'x 730, 732 (9th Cir. 2003); *Russell v. Shater*, 62 F.3d 1421 (Table), 1995 WL 472681, at *2 (8th Cir. 1995) (per curiam) (unpublished); *Slavin v. C.I.R.*, 932 F.2d 598, 601 (7th Cir. 1991); *Bates v. Astrue*, No. 8:09-3355-MBS, 2011 WL 1113473, at *15 (D.S.C. Mar. 24, 2011). There are, however, mechanisms provided by the North Carolina State Bar and claims of legal malpractice that can be used to address disputes over a lawyer's performance. In making Green aware of these avenues for remedy, the court expresses no opinion as to the adequacy of her counsel's performance.

Unlike an ineffective assistance of counsel claim, a claimant can contend that a hearing transcript is inadequate. *McGlone v. Heckler*, 791 F.2d 1119, 1120 (4th Cir. 1986). However, "[w]hether the transcript is inadequate depends on the materiality of the omissions" and the plaintiff bears "the burden of showing that some material evidence was not reported or was so incompletely reported that its effect is obscured." *Id.* Green made no such showing: she only asserts that "[t]he actual transcript of the original hearing has many omissions and errors" (D.E. 26 at 1). Therefore, her claim that the hearing transcript is inadequate is also without merit.

Similarly, Green offers no evidence in support of her argument that the Appeals Council repeated "discrepancies, inadequacies, and omissions" contained in Judge Seery's opinion. Furthermore, contrary to Green's assertion otherwise, the Appeals Council did consider the letter she wrote to it. *See* D.E. 24 at 9 ("In response to the Notice of Appeals Council Action, the claimant alleged that the Administrative Law Judge abused his discretion in assigning weight to medical opinion evidence. We considered the allegations….[and], [a]fter reviewing the entire

record … we have determined that there was no abuse of discretion in this case."). Because "conclusory allegations … unsubstantiated by facts cannot be grounds for relief and do not influence [the] court," *Woodhouse ex rel. Taylor v. Astrue*, 696 F. Supp. 2d 521, 530 (D. Md. 2010) (citing *Bell Atantic Corp. v. Twombly*, 550 U.S. 544 (2007)). the court determines that these claims are without merit.

Finally, while the court understands Green's frustration with the duration of the disability adjudication process, undue delay is not grounds for remand in this case. In *Heckler v. Day*, 467 U.S. 104 (1984), the Supreme Court held that federal courts do not have the authority to impose deadlines on the resolution of disability claims because Congress had repeatedly considered and rejected proposals for mandatory deadlines. 467 U.S. at 110–18. In so holding, the Court implicitly recognized that "the time needed before a well-reasoned and sound disability hearing decision can be made may vary widely on a case-by-case basis." *Id.* at 115 (quoting H.R.Rep. No. 97-588, at 19–20 (1982)); *see also Jones v. Colvin*, No. 3:12V909, 2014 WL 843289, at *15 (E.D. Va. Mar. 4, 2014), *aff'd*, 555 F. App'x 275 (2014). Courts applying the case-by-case standard "have held that multiple-month delays are not remarkable in the Social Security system and do not constitute error." *Jones*, 2014 WL 843289, at *3 (citing cases). Courts have upheld a three year delay between a claimant's hearing and the Appeals Council decision, *Schomer v. Comm'r of Soc. Sec.*, 80 F. App'x 242, 243 (3rd Cir. 2003) (unpublished); *Small v. Astrue*, No. 7:08-CV-141-FL, 2009 WL 3029737, at *3 (E.D.N.C. Sept. 22, 2009), and the Social Security Administration's own documentation puts claimants on notice that they can expect to wait between 12 to 14 months from their request for a hearing and the hearing (D.E. 24 at 117). In this case, Green's hearing took place approximately 15 months after her request for hearing (*see* D.E. 24 at 36, 104) and the Appeals Council issued its decision approximately 20 months after the

13

hearing took place (D.E. 24 at 10, 36). Accordingly, the court cannot find that Green's case has been delayed to such an abnormal extent that it requires remand.

## III. Conclusion

For the forgoing reasons, the court recommends that Green's Motion for Remand (D.E. 26) be granted, that Colvin's Motion for Judgment on the Pleadings (D.E. 29) be denied, and that the Commissioner's final decision be remanded.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the**

**Memorandum and Recommendation.** *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

Dated: June 28, 2016

_____
R<span>OBERT</span> T. N<span>UMBERS</span>, II
U<span>NITED</span> S<span>TATES</span> M<span>AGISTRATE</span> J<span>UDGE</span>